IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

LIBERTY INSURANCE CORPORATION, §
 §
          Plaintiff, §
 §
VS. § NO. 4:20-CV-098-A
 §
ARCH INSURANCE COMPANY, ET AL., §
 §
          Defendants. §

## MEMORANDUM OPINION AND ORDER

Came on for consideration the motion of defendant TIG Insurance Company ("TIG") for summary judgment. The court, having considered the motion, the responses of plaintiff, Liberty Insurance Corporation, and third-party defendant, M.A. Mortenson Companies, Inc. ("Mortenson"), the replies, the record, and applicable authorities, finds as follows:

I.

## Underlying Facts

The record establishes the following undisputed facts:

On March 19, 2012, Mortenson and L.O. Transport, Inc. ("L.O."), entered into a subcontract agreement pursuant to which L.O. agreed to perform aggregate hauling for Mortenson, which was the contractor for construction of Bobcat Bluff Wind Project

in Archer County, Texas. Doc.[1] 80 at 1-45. The agreement provided in pertinent part as to insurance:

> 16.1 Prior to starting the Work, [L.O.] shall procure, maintain and pay for such insurance as will protect against claims for bodily injury or death, or for damage to property, including loss of use, which may arise out of operations by [L.O.] or by any of its subcontractors or by anyone employed by any of them, or by anyone for whose acts any of them may be liable.
> . . .
>
> 16.2 [L.O.] shall procure and maintain the following minimum insurance coverages and limits of liability:
> . . .
> Commercial General Liability
>     $2,000,000 each occurrence
>     $2,000,000 aggregate (applicable on a per project basis)
> . . .
> Automobile liability    $2,000,000 each accident
> . . .
>
> 16.4 [L.O.] shall endorse its Commercial General Liability [and] Automobile Liability . . . policies to add Mortenson [and others] as "additional insureds" with respect to liability arising out of (a) operations performed for Mortenson or Owner by or for [L.O.], (b) [L.O.'s] completed Work, (c) acts or omissions of Mortenson or Owner in connection with their general supervision of operations by or for [L.O.], (d) [L.O.'s] use of Mortenson's tools and equipment, and (e) claims for bodily injury or death brought against any of the additional insured by [L.O.'s] employees, or the employees of its subcontractors of any tier, however caused, related to the performance of operations under the Contract Documents. Such insurance afforded to Mortenson, Owner and others as additional insureds under [L.O.'s] policies shall be primary insurance and not excess over, or contributing with, any insurance purchased or

---

[1] The "Doc. __" reference is to the number of the item on the docket in this action.

>     maintained by Mortenson or Owner or others required to
>     be included as additional insureds.
>     . . .

Id. at 20-21. Further, the subcontract agreement provided as to indemnity:

> 17.1 To the fullest extent permitted by law, [L.O.] shall defend and indemnify Mortenson and all others whom Mortenson is obligated to defend and indemnify by the Contract Documents, (collectively, "the indemnified parties") from and against any and all suits or claims alleging damages, losses and expenses, including attorneys' fees, attributable to injuries to persons or damage to property (including loss of use), arising out of or resulting from [L.O.'s] Work, including all suits and claims for which any or all of the indemnified parties may be or may be claimed to be liable, and including all suits and claims that arise during and after construction of the Project. [L.O.] understands and agrees that this Paragraph obligates [L.O.] to do defend and indemnify the indemnified parties from all suits and claims that allege negligence or other wrongful conduct on the part of the indemnified parties, and to pay all costs of defense of the indemnified parties, including attorneys fees and ancillary costs and expenses incurred by the indemnified parties. . . .
>
> 17.2 [L.O.] further agrees to obtain, maintain and pay for commercial general liability insurance which conforms to Article 16 . . .
>
> 17.3 [L.O.] understands and agrees to undertake these obligations regardless of whether the injured person asserting a suit or claim is an employee of [L.O.], its subcontractors, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable. . . .

Id. at 21, 24.

3

TIG is the successor by merger to American Safety Indemnity Company ("ASIC"), which issued two policies to L.O. as its insured: Commercial General Liability Policy (Occurrence), Policy No. ENV024057-11-03, effective from November 7, 2011 to November 7, 2012 (the "ASIC CGL policy"), Doc. 80 at 124-80, and Commercial Excess Liability (Limited Umbrella) Insurance (Occurrence), Policy No. ENU024060-11-03, effective from November 7, 2011 to November 7, 2012 (the "ASIC excess policy"). Id. at 182-209 (together "the ASIC policies"). In addition, defendant Arch Insurance Company ("Arch") issued its Policy No. HOPKG0042200 to L.O., effective November 7, 2011, to November 7, 2012. Doc. 19 at 2, ¶ 9. The Arch policy included a Commercial Auto Coverage Part.[2] Id.

On April 11, 2014, James M. Shelton ("Shelton") filed a first amended petition against Mortenson and others in Cause No. CV14-04-241 in the 271st Judicial District Court of Wise County, Texas (the "underlying lawsuit"). In it, Shelton alleged that on or about April 12, 2012, he was driving an 18 wheeler tractor-trailer combination with a full load of gravel on Bell Road in Archer County when two other empty tractor-trailers headed in the opposite direction failed to yield the right of way to him,

---

[2] Plaintiff's claims against Arch have been dismissed without prejudice, Doc. 82, and that dismissal has been made final. Doc. 83.

4

forcing Shelton to run off the road to avoid a head-on collision. Shelton's truck rolled into a ditch on the side of the road and he sustained severe injuries. Doc. 80 at 50-60. Shelton asserted causes of action for negligence, negligent hiring, negligent entrustment, negligent supervision, and gross negligence against Mortenson. He did not name L.O. as a defendant. Id. In his third amended petition filed April 9, 2015, Shelton added an allegation that the manner in which Bell Road was widened, constructed, maintained, and/or modified by Mortenson for the Bobcat Bluff Wind Project was also a proximate cause of his truck rolling. Id. at 66.

In May 2014, Mortenson placed its commercial general liability carrier, plaintiff, on notice of the underlying lawsuit. Doc. 80 at 95. Plaintiff undertook the defense of Mortenson in the underlying lawsuit. Id. at 1-45. By letter dated June 3, 2016, plaintiff made demand on L.O. to reimburse it for defense costs of the underlying lawsuit. Doc. 90 at 37. L.O. apparently forwarded Mortenson's demand to Arch, which, by letter dated September 23, 2016, denied coverage under its policy. Id. at 94-103.

On February 13, 2017, Mortenson filed suit against L.O. under Cause No. CV17-02-130 in the District Court of Wise County, Texas, 271st Judicial District, for breach of contract

5

arising out of the failure of L.O. to defend Mortenson in the underlying lawsuit. Doc. 90 at 197-253. On November 1, 2018, L.O. filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code, which was assigned Case No. 18-52579-cag in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division. Mortenson did not make an appearance in the bankruptcy case.

The underlying lawsuit was tried in July 2019 and the jury returned a verdict against Mortenson. Doc. 80 at 101. The final judgment was signed August 27, 2019.[3] Id. at 102. Mortenson appealed and the appeal is currently pending under Case No. 02-19-00435-CV in the Court of Appeals for the Second District, Fort Worth, Texas.

On August 13 or 15, 2019, L.O. tendered the defense of Cause No. CV17-02-130, the contractual indemnification claim, to TIG's predecessor, ASIC. Doc. 80 at 122; Doc. 90 at 259. By letter dated November 19, 2019, ASIC denied the claim. Doc. 90 at 258-71.

On February 5, 2020, plaintiff filed its complaint in this action. Doc. 1. Plaintiff seeks defense and indemnity of Mortenson in the underlying lawsuit as an additional insured

---

[3] The judgment included $510,153.51 for past damages; $510,153.51 prejudgment interest; and $5,264,619.10 for future damages. Doc. 80 at 102.

under the ASIC policies. It also seeks to recover as contractual indemnitee under the subcontractor agreement between Mortenson and L.O., saying that it is subrogated to that right. This lawsuit was the first notice TIG received that Mortenson sought defense and indemnification in the underlying lawsuit as an additional insured under the ASIC policies. Doc. 80 at 122.

II.

Grounds of the Motion

TIG asserts three grounds in support of its motion. Doc. 79. First, TIG has no duty to defend or indemnify Mortenson as an additional insured under the ASIC policies due to Mortenson's and plaintiff's material breach of the policies' notice provisions. Second, coverage is excluded by the ASIC CGL policy's auto exclusion. And, third, Mortenson is not an insured under the ASIC excess policy.

III.

Analysis

A.  Failure to Give Notice

In its first ground, TIG urges that it has no duty to defend or indemnify Mortenson as an additional insured under the ASIC policies because plaintiff and Mortenson materially breached the policies' notice provisions by failing to give notice of demand for defense and indemnity until five months

7

after the final judgment was entered in the underlying lawsuit. The ASIC CGL policy provides that notice of an occurrence, claim or suit must be given to the insurer "as soon as practicable" and that the insured must "immediately" send copies of any demands, notices, summonses or legal papers received. Doc. 80 at 138. The ASIC excess policy requires that the insurer be notified "promptly" of an occurrence or offense (which may result in a claim), claim or suit. Id. at 192-93.

When a commercial general liability insurance policy requires notice of a claim or suit "as soon as practicable," the failure to give such notice defeats coverage if the insurer was prejudiced by the delay. PAJ, Inc. v. Hanover Ins. Co., 243 S.W.3d 630, 636-37 (Tex. 2008). Texas courts have recognized that prejudice occurs as a matter of law when: (1) the insurer, without notice or actual knowledge of a suit, receives notice after entry of default against the insured; (2) the insurer receives notice of the suit and the trial date is fast approaching, thereby depriving it of an opportunity to investigate or mount an adequate defense; (3) the insurer receives notice of a lawsuit after the case has proceeded to trial and judgment has been entered against the insured; or (4) the insurer receives notice of a default judgment against its insured after the judgment becomes final and nonappealable. St.

8

Paul Guardian Ins. Co. v. Centrum G.S. Ltd., 383 F. Supp. 2d 891, 903 (N.D. Tex. 2003)(citing numerous Texas cases). The insurer has no duty to notify the insured of coverage and no duty to defend until the insured notifies the insurer that it has been served with process and expects the insurer to defend. Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Crocker, 246 S.W.3d 603, 609 (Tex. 2008); Harwell v. State Farm Mut. Auto. Ins. Co., 896 S.W.2d 170, 173-74 (Tex. 1995). Once the case is over—that is, the jury has returned its verdict—notice is clearly too late. Berkley Reg'l Ins. Co. v. Philadephia Indem. Ins. Co., 690 F.3d 342, 350-51 (5th Cir. 2012). See also Berkley Reg'l Ins. Co. v. Philadelphia Indem. Ins. Co., 600 F. App'x 230, 237 (5th Cir. 2015); Jamestown Ins. Co., RRG v. Reeder, 508 F. App'x 306, 309 (5th Cir. 2013). The cows have long since left the barn. Berkley, 690 F.3d at 351 (noting that the argument that the insurer could still participate in the appeal rang hollow).[4]

In this case, the summary judgment evidence establishes that the underlying lawsuit was filed against Mortenson on April 11, 2014. Mortenson gave notice to plaintiff in May 2014 and

---

[4] To the extent Mortenson appears to argue that TIG has a duty at this point to pursue the appeal of the underlying action on its behalf, the case it cites does not stand for that proposition. Doc. 89 at 12 (citing Associated Auto. Inc. v. Acceptance Indem. Ins. Co., 705 F. Supp. 2d 714, 723-24 (S.D. Tex. 2010)). And, if it did, it would be inconsistent with the Fifth Circuit's holding in Berkley Reg'l Ins. Co. v. Philadelphia Indem. Ins. Co., 590 F.3d 342 (5th Cir. 2012).

plaintiff undertook Mortenson's defense. The jury returned its verdict on July 19, 2019. Final judgment was signed August 27, 2019. TIG was not placed on notice of any claim for the defense and indemnification of Mortenson as an additional insured in the underlying lawsuit until February 7, 2020, when it received plaintiff's complaint in this action. That notice was clearly untimely and prejudicial to TIG as a matter of law.[5]

That L.O. tendered the underlying lawsuit to TIG for defense and indemnity on August 15, 2019, did not impose any duty on TIG to defend or indemnify Mortenson. Crocker, 246 S.W.3d at 609. TIG was not obligated to act unless and until Mortenson made demand on it. Id. And, contrary to Mortenson's argument, there is no probative summary judgment evidence to support the allegation that TIG knew at any time before the filing of this lawsuit that Mortenson was demanding defense and indemnity of the underlying lawsuit as an insured under the ASIC policies.[6]

---

[5] The contention that TIG would not have been harmed because it would have denied coverage had Mortenson made a demand for defense and indemnity is not supported by the record. This is not a case like Sentry Select Ins. Co. v. Lopez, No. EP-14-CV-284-KC, 2016 WL 4257751, at *9 (W.D. Tex. Mar. 18, 2016), where there was undisputed evidence that the insurer knew about the lawsuit, conducted its own independent investigation, and determined that it would have denied a defense even had demand been made.

[6] The documents to which Mortenson refers are unauthenticated and confusing. For example, Mortenson alleges that Exhibit I is a communication with TIG's agent, but there is nothing to show who the agent is or by what authority it is acting. In any event, the document attaches a copy of the petition in No. CV17-02-130, the suit by Mortenson seeking contractual indemnity from L.O. That document does not constitute notice to TIG that Mortenson seeks defense and indemnity in the underlying lawsuit as an additional insured under the ASIC policies. Nor do the others to which it refers. Doc. 89 at 7 (citing Exs. K, L, & M).

Mortenson finally argues that it is excused from giving timely notice to TIG because it did not know about the ASIC policies. Doc. 89 at 13. The case upon which it relies does not support its position. In Century Sur. & Ins. Corp. v. Anderson, 446 S.W.2d 897 (Tex. App.—Fort Worth 1969, no writ), a grandchild was badly burned by acts of negligence of the grandmother. Suit was brought on behalf of the grandchild. The grandparents were incorrectly told by the bank that was trustee for a trust that covered the premises where they resided that there was no insurance. They hired an attorney to see about the possibility of removing the bank as trustee given its failure to obtain insurance and he immediately determined that the policy existed and made demand for defense and indemnity on the insurance company. At the time of the demand, the suit by the grandchild had never been tried and was still pending. The court reviewed a number of cases and determined that under the facts and circumstances of that case, notice had been given as soon as practicable.

Here, Mortenson has not shown that it acted with diligence in seeking to determine whether L.O. had obtained the insurance required pursuant to the subcontract agreement between them. L.O. was required to provide certificates of insurance to Mortenson prior to beginning work. Doc. 80 at 21, ¶ 16.6.

Mortenson apparently chose to ignore the matter until after the verdict in the underlying lawsuit. Information regarding L.O.'s insurance policies should have been obtained long before the verdict and long before L.O. filed bankruptcy. Mortenson has not cited any authority to support the proposition that repeatedly tendering the underlying lawsuit to L.O. constitutes diligence.[7]

B.  The CGL Policy's Auto Exclusion

In its second ground, TIG argues that even if the court were to determine that it was not prejudiced by the lack of notice of the claim, the ASIC CGL policy's auto exclusion would preclude coverage for Mortenson. The ASIC CGL policy had limits of liability of $1,000,000 per occurrence and $2,000,000 in the general aggregate with a $2,500 deductible per occurrence. Doc. 80 at 124. It contained an exclusion for bodily injury "arising out of the ownership, maintenance, use or entrustment to others of any [auto] owned or operated by or rented or loaned to any insured. Use includes operation and 'loading or unloading.'" Id. at 132.

In this case, it is clear that Shelton's injuries arose out of the use of an "auto" under the ASIC CGL policy since it was a tractor-trailer designed for travel on public roads. Doc. 80 at

---

[7] There is no support for Mortenson's representation that it tendered the underlying lawsuit to L.O. "with the understanding that they would provide information about the policies." Doc. 89 at 14. In any event, demand on L.O. is not demand on TIG.

65, 140. And, Mortenson has admitted that Shelton was employed by L.O. as a truck driver and was acting in that capacity when the facts giving rise to the underlying lawsuit occurred. Doc. 89 at 5; Doc. 90 at 199. That the bodily injury arose out of the operation of the vehicle by L.O. through Shelton is not an extrinsic fact but the very basis for the underlying lawsuit and for potential insurance coverage under the ASIC policies. Clearly, coverage is excluded.

Mortenson argues that establishing the exclusion would violate the eight corners rule, pursuant to which an insurer's duty to defend is determined by an analysis of the pleadings and the policy. Doc. 89 at 15 (citing GuideOne Elite Ins. Co. v. Fielder Road Baptist Church, 197 S.W.3d 305 (Tex. 2006)). As Mortenson admits, however, the pleadings in the underlying lawsuit do not include any factual allegation that Shelton was employed by an insured. In fact, L.O. is not named in the underlying lawsuit. Id. at 16. But, unless L.O. was somehow involved, there could be no insurance coverage. An exception to the eight corners rule applies because extrinsic evidence is relevant to the determination of coverage only, not to liability in the underlying lawsuit. GuideOne, 197 S.W.3d at 309-09 & nn. 1 & 2. That Mortenson recognizes this to be the case is implicit in its demand to L.O. for defense and indemnity:

13

> The facts and allegations in this case fall squarely within the ambit of LO Tranport's defense and indemnity obligation. James Shelton was employed by LO Transport and contends that he was injured in the course and scope of that employment on April 12, 2012 in connection with work LO Transport was performing for Mortenson. . . .

Doc. 90 at 37. Shelton was injured when the truck he was driving for L.O. overturned. The fact that gives rise to potential insurance coverage is that Shelton was driving for L.O. at the time of the accident. And, that same fact establishes that the auto exclusion applies.

C.  The ASIC Excess Policy

Finally, TIG argues that Mortenson is not a named insured under the ASIC excess policy. Under pertinent provisions of that policy, the word "insured" means any person or organization qualifying as such under Section II-Who Is An Insured. Doc. 80 at 187. Section II in turn provides:

> 1. If you are designated in the Declarations as:
> . . .
> c. An organization other than a partnership or joint venture, you are an insured. . . .
>
> 2. Each of the following is also an insured:
> a. As respects the "auto hazard":
> (1) Anyone using an "auto" you own, hire or borrow provided it is with your permission; and
> (2) Any of your executive officers, directors, partners or employees operating an "auto" you do not own, hire, or borrow while it is being used in your business.
> . . .

14

>       No person or organization is an insured with respect
>       to the conduct of any current or past partnership or
>       joint venture that is not shown as a Named Insured in
>       the Declarations or an Additional Named Insured listed
>       by endorsement to the policy.

Id. at 191.

Mortenson is not designated in the Declarations section of the ASIC excess policy as an insured. Nor does the ASIC excess policy contain any endorsement identifying Mortenson as an additional insured. Doc. 80 at 182-209. Further, Mortenson does not fall within the definition of "additional insured." Id. at 195. Neither Mortenson nor plaintiff has raised a genuine issue of material fact as to this issue and TIG is entitled to judgment as a matter of law.

D.   Indemnity

Mortenson argues that TIG is not entitled to summary judgment as to all of the claims asserted in this lawsuit because it fails to address whether Mortenson is entitled to contractual indemnity from L.O., which it alleges would be covered by the ASIC policies. But neither plaintiff nor Mortenson has standing to bring an action against TIG on that basis, because L.O.'s liability to Mortenson has not been determined. Ohio Cas. Ins. Co. v. Time Warner Ent. Co., L.P., 244 S.W.3d 885, 888 (Tex. App.—Dallas 2008, pet. denied)(Texas is not a direct action state).

15

Mortenson also argues that determination of TIG's duty to indemnify Mortenson is premature because the underlying lawsuit is on appeal. Doc. 89 at 9-10. In this case, however, TIG has established that there is no insurance coverage under the ASIC policies. If there is no coverage, there can be no duty to defend or indemnify. See Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin, 955 S.W.2d 81, 84 (Tex. 1997).

IV.

Order

The court ORDERS that TIG's motion for summary judgment be, and is hereby, granted; that plaintiff and Mortenson take nothing on their claims against TIG; and that such claims be, and are hereby, dismissed with prejudice.

SIGNED May 14, 2021.

_____
JOHN McBRYDE
United States District Judge